UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DOUGLAS D. HAGUE, and CLEAN COAL TECHNOLOGIES, INC., | ) ) ) |
| Defendants. | ) ) ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission alleges as follows:

### I. INTRODUCTION

1. From July through August 2009, Defendants Douglas D. Hague and Clean Coal Technologies, Inc. engaged in a fraudulent scheme involving the company's illicit kickbacks of Clean Coal stock to induce purchases and phony documents to mask those kickbacks.

2. As part of the scheme, Hague and a consultant for Clean Coal, Charles J. Douglas, agreed Douglas would pay illegal kickbacks to a purported trustee of a pension fund so the trustee would purchase 15,018 restricted shares of the company's stock from Douglas. Hague, who was Clean Coal's president and CEO, directed the delivery of the stock certificates to the pension fund.

3. Unbeknownst to the Defendants, the corrupt pension fund trustee was a creation of the FBI. The pension fund trustee's purported friend who helped arrange the

deals was an undercover FBI agent, and the middleman was a witness cooperating with the FBI.

4. To conceal the kickbacks, the Defendants, Douglas, and the cooperating witness agreed Douglas would enter into a sham consulting agreement with a purported consulting company the FBI had created to receive the kickbacks.

5. As a result of the conduct described in this Complaint, the Defendants violated Section 17(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(1), and Section 10(b) and Rule 10b-5(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a). Unless restrained and enjoined, they are reasonably likely to continue to violate the federal securities laws.

6. The Commission respectfully requests that the Court enter: (a) a permanent injunction restraining and enjoining the Defendants from violating the federal securities laws; (b) an order directing the Defendants to pay disgorgement with prejudgment interest; (c) an order directing the Defendants to pay civil money penalties; (d) an order barring Hague from participating in any offering of a penny stock; and (e) an order barring Hague from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## II. DEFENDANTS AND RELEVANT INDIVIDUAL

### Defendants

7. **Hague** was the president and CEO of Clean Coal. He resides in Boca Raton, Florida.

8. **Clean Coal** is a Nevada corporation with offices formerly located in Coral Springs and presently located in New York, New York. The company purported to own a patented technology it believed would provide clean energy at low costs through the use of coal. Clean Coal's common stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act. During the relevant time period, the company's common stock was quoted on the OTC Link operated by OTC Markets Group, Inc. under the symbol "CCTC."

9. Clean Coal's stock is a "penny stock" as defined by the Exchange Act. At all times relevant to this Complaint, the stock's shares traded at less than $3 per share. During the same time period, Clean Coal's stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act. For example, the company's stock: (a) did not trade on a national securities exchange; (b) was not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47); (c) did not have net tangible assets (i.e., total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) did not have average revenue of at least $6,000,000 for the last three years. *See* Exchange Act, Rule 3a51-1(g).

### Relevant Individual

10. **Douglas** is a consultant for Clean Coal. He resides in Coral Springs, Florida.

### III. JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a); and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

12. This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida, because Hague resides within the District and Clean Coal had offices located within the District during the time period relevant to the allegations in this complaint. Moreover, many of the Defendants' acts and transactions constituting violations of the Exchange Act occurred in the District. For example, Hague met with the cooperating witness and the FBI agent on July 10, 2009 in Broward County to finalize the scheme.

13. The Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, or of a means or instrumentality of interstate commerce, or of the mails, in connection with the conduct alleged in this Complaint.

## IV. THE FRAUDULENT SCHEME

14. In early July 2009, Hague, Douglas and the cooperating witness began discussing a scheme involving Clean Coal stock. Shortly afterwards, on July 10, 2009, Hague and Douglas met in Broward County, Florida with the cooperating witness and an FBI agent posing as the friend of a corrupt employee pension fund trustee, to finalize the scheme.

15. As part of the scheme, Hague, Douglas, the cooperating witness and the FBI agent agreed the pension fund would purchase $20,000 worth of Clean Coal stock in exchange for a 30 percent kickback to the pension fund trustee. In addition, they agreed the cooperating witness, as a middleman, would receive restricted shares of the company's stock for introducing the parties. Subsequently, Hague and Douglas agreed

with the FBI agent that, instead of providing the cooperating witness with restricted stock, the FBI agent would compensate the cooperating witness.

16. During the meeting, Hague stated he and Douglas were interested in the transaction as long as they could use an individual's restricted stock, rather than the company's.

17. Hague stated he would "feel a lot more comfortable in a transaction with private shares" and noted "the last thing I want to be doing is trying to explain . . . these large consulting agreements."

18. To effectuate the scheme, Hague agreed the pension fund would purchase Clean Coal stock directly from Douglas, rather than the company. Douglas told the others at the meeting, including Hague, " . . . that way we keep the company clean . . . I don't want anything in there that looks like a kickback or a payoff or whatever you want to call it . . ."

19. Hague and the others agreed Douglas would use his shares for the transaction, and then he would loan the proceeds to the company through a debenture. Douglas said he would get his stock back once the debenture matured. Douglas stated that what he did personally would not come under the scrutiny of the Commission.

20. To conceal the kickback, Hague, the FBI agent, the cooperating witness and Douglas agreed Douglas would pay the money to a bogus consulting company. The FBI agent explained the sham consulting company would prepare an invoice to create a "paper trail," and that a phony consulting agreement would be prepared. The cooperating witness repeatedly told Hague and Douglas the bogus consulting company would not be

performing actual consulting services, and that the consulting agreement was just "insulation."

21. During the course of their conversations and meeting, the cooperating witness and the FBI agent told Hague and Douglas the pension fund trustee was a fiduciary for the pension fund and that he had a fiduciary duty and responsibilities to beneficiaries of that fund.

### A. The First Restricted Stock Transaction and Kickback

22. As Hague and the others had agreed, Douglas and the pension fund entered into a stock purchase agreement whereby the pension fund agreed to purchase 8,000 restricted shares of Clean Coal stock from Douglas for $20,000.

23. The FBI then wired $20,000 to Douglas's bank account on July 14. Two days later, Douglas sent a $6,000 kickback in the form of a cashier's check to the bogus consulting company.

24. On August 11, Clean Coal sent the pension fund a stock certificate for the agreed-upon 8,000 shares of restricted Clean Coal stock. Hague, as Clean Coal's president, signed the certificate.

25. Hague directed an individual at Clean Coal to send the certificate to the pension fund by overnight delivery, using the address in the stock purchase agreement.

### B. The Second Restricted Stock Transaction and Kickback

26. Approximately two weeks after completing the transaction, Hague, Douglas, the FBI agent and the cooperating witness agreed to do another deal in which the purported pension fund would buy Clean Coal stock in return for a kickback.

27. Douglas and the pension fund entered into a second stock purchase agreement, dated July 30, 2009, pursuant to which the pension fund agreed to purchase 7,018 restricted shares of Douglas's stock for $20,000.

28. On August 5, the FBI agent emailed Hague and Douglas the signed stock purchase agreement and an invoice, dated August 4, from the bogus consulting company, in the amount of $6,000. The FBI agent also emailed Hague and Douglas the instructions for sending the $6,000 kickback to the fake consulting company.

29. On August 5, the FBI wired $20,000 to Douglas's bank account. Two days later, Hague emailed the FBI agent that Douglas was traveling and would send the invoice payment the next morning. Douglas then sent a $6,000 kickback in the form of a cashier's check to the bogus consulting company.

30. On August 11, Clean Coal sent the pension fund a stock certificate for the agreed-upon 7,018 shares of restricted Clean Coal stock. Again, Hague, as Clean Coal's president, signed the stock certificate.

31. Hague directed an individual at Clean Coal to send the certificate to the pension fund by overnight delivery, using the address in the stock purchase agreement.

32. In the following months, Hague and Douglas communicated with the cooperating witness about possible additional transactions. In January 2010, the three met to discuss another possible fraudulent scheme involving Clean Coal stock. Ultimately, however, there were no additional transactions.

## COUNT I

### Fraud In Violation of Section 17(a)(1) of the Securities Act

33.     The Commission realleges and incorporates paragraphs 1 through 32 of its Complaint.  From July through August 2009, the Defendants directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

34.     By reason of the foregoing, the Defendants, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(l) of the Securities Act, 15 U.S.C. §77q(a)(1).

## COUNT II

### Fraud in Violation of Section 10(b) and Rule 10b-5(a) of the Exchange Act

35.     The Commission realleges and incorporates paragraphs 1 through 32 of this Complaint.

36.     From July through August 2009, the Defendants, directly and indirectly, by use of any means or instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly, willfully or recklessly, employed devices, schemes, or artifices to defraud.

37.     By reason of the foregoing, the Defendants, directly or indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule l0b-5(a), 17 C.F.R. § 240.10b-5(a).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine, and find that the Defendants have committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5(a) of the Exchange Act, as indicated above.

### III.

### Disgorgement

Issue an Order directing all Defendants to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### IV.

### Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

## V.

## Penny Stock Bar

Issue an Order barring Hague from participating in any offering of a penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), for the violations alleged in this Complaint.

## VI.

## Officer and Director Bar

Issue an Order pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 77t(e) and 15 U.S.C. § 78u(d)(2), barring Hague from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

## VII.

## Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VIII.

## Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

June 4, 2012                        By:    _____
                                           Edward D. McCutcheon
                                           Senior Trial Counsel
                                           Florida Bar No. 683841
                                           Direct Dial: (305) 982-6380
                                           E-mail: mccutcheone@sec.gov
                                           **Lead Attorney**

                                           Trisha D. Sindler
                                           Senior Counsel
                                           Florida Bar # 0773492
                                           Telephone: (305) 982-6352
                                           E-mail : FuchsT@sec.gov


                                           ATTORNEYS FOR PLAINTIFF
                                           SECURITIES AND EXCHANGE COMMISSION
                                           801 Brickell Avenue, Suite 1800
                                           Miami, Florida 33131
                                           Telephone: (305) 982-6300
                                           Facsimile: (305) 536-4154

-11-